The next case on the calendar for today is Elia v. Steve Madden, Ltd., No. 18-831. May it please the Court. Ted Levine, Your Honor, on behalf of Elia, the plaintiff and the appellant in this case. The issue here is whether the plaintiff or the appellant presented a plausible case for trade dress infringement. District Court found that the description of the trade dress was too broad. Defendant Madden argued, well, all plaintiff did was slap together a list. They also suggested that it took Madden, excuse me, it took plaintiff four times to define its trade dress. None of those arguments are true. They didn't slap together a list. The list was very specific. We tried to present to the Court a number of cases to show what other kinds of shoe cases would define, how they would define their trade dress. Quite frankly, they were more broad, a lot more broad, and the Courts continued to sustain those cases. You say none of that was true, and you included the fact that they took at least three and arguably four tries. You're not saying that's not true, are you? The Court actually, we only amended the complaint once. I understand that. Right. How many times did you prepare a document that tried to describe the distinctive features? Twice. Only twice? There was some discovery. In drafted documents that purported to describe the details of the features. That were filed with the Court. Either proposed. We only proposed two descriptions of the trade dress. And when you proposed one and then you filed one, was that different than the proposal? It was a, we augmented the description. So that makes at least three. No, no, Your Honor. We filed the original complaint. You had the first one. Right. And you had a motion to amend. We had the motion to amend. And in that motion to amend, we originally presented a complaint that was consistent with the description. Consistent, but it was different. No, no. It was the same. And then when we finally filed the amended complaint, that's when we changed it. Consistent with the prior ruling of the Court. You're saying there's only two versions? Yes. Really? You'll stand on that? No? That's my understanding. There's only two versions of the trade dress. And the second version was merely to increase the description of the dress. All right. In fact, the Court, the District Court actually said that, Your Honor. The other two? Yeah, the District Court actually said . . . Excuse me if I can get my glasses out. That the FAAC constituted only one amendment. It said, the alterations contained in the FAAC constitute the first alterations to those claims in the actual history of the case. From the first complaint. That's right. And that's all we had was one other amended complaint. You drafted an earlier one, didn't you? But that was the same as the original complaint. All right. That's your argument. The only reason that we amended the complaint, we sought to amend the complaint, was to add an additional defendant. Well, tell us about the specificity of your items then. Okay. So, the description, there's two shoes involved. The first one had to do with, it was called the Lulia shoe. It involved a quarter-inch multi-color or multi-shaded wide straps. It had a closed toe. It had a Mary Jane strap. A Mary Jane strap? Yes. Did it say how wide or how it was fastened or what material? Any of those details? No, but there was . . . It said a Mary Jane strap. It said there was a Mary Jane strap and it depicted . . . How many shoes would you guess are on the market with a Mary Jane strap? Well, I would say there are quite a few, but I would also say to you, Your Honor . . . When you say a Mary Jane strap, don't you have to particularize your strap in order to make it distinctive? Well, I believe we did by depicting the shoe, the actual shoe. We showed the shoe, not just a description, in our complaint. You said not just a description. There was no description of the strap other than its colloquial name, Mary Jane. Well, the description was also depicted, Your Honor. And you think that's enough? I think combined with all of the other elements that we included, it's the overall appearance of the shoe. The Mary Jane strap in and of itself was not the final matter in terms of defining the trade dress. How did you particularize the sole? The sole we defined with horizontal grooves. We defined it with weaved notches. You talked about their depth, their measurement, the material. You just said grooves. That's right. We said that there were horizontal grooves on the sole. Are there hundreds of shoes out there with grooves? Again, Your Honor, we showed a . . . we depicted the shoe. We showed the shoe. So it really comes down to if your verbal description is deficient, you want to say that the picture carries the day for you. I say the picture combined with the verbal description. That's correct, Your Honor. And if we thought a picture in this case is not worth a thousand words, but that you need maybe not a thousand, but at least a few, where would you be without the picture? Would you still say your verbal descriptions suffice? I would, Your Honor, yes, because I think we're combining it with other features. For example, the appendage on the heel that extends higher than the weave. It's very . . . if you look at many, many trade dress claims, the descriptions are no more in detail than these, and they combine them with visual depictions of the item. So whether it be a shoe or a pocketbook, they combine them so that it's clear in the complaint what exactly it is that's being claimed. What would an injunction . . . you sought an injunction in your first amended complaint. You wanted a judgment permanently enjoining, restraining defendants and so on from imitating, copying, or making unauthorized use of three shoes, right, Lulia, Comfy, and Catwalk. Would the injunction just copy your generic description of a shoe with a Mary Jane strap and the other factors and include a picture? Well, it wasn't . . . How would one enforce what you've asked? I mean, I'm looking for the same kind of particularity that Judge Newman found wanting, I think, in your description. Exactly. I don't believe that it was a generic description. I believe when you combine the description, as most trade dress claims do, most complaints do, with a picture of the shoe, it is very clear what it is. If you look . . . in fact, if you look at the side-by-sides or even the . . . you don't even have to look at the side-by-sides. If you look at the Madden shoe versus the shoe that my client created, in all three cases, it's virtually dead on. It's exact. That does not establish trade dress infringement under our law, I think. But you'll have time to address this on rebuttal. Let's hear from Mr. Lucicero. Thank you. Good morning, Your Honor. This is Anthony Lucicero from Amstel Rothstein for Steve Madden. With me is my partner, Douglas Miro, and our colleague, Ben Charco. Your Honor, before I launch into my prepared remarks, I would like to address Judge Newman's questions. Yes, Your Honor, there were at least three attempts to define the trade dress, and that's only in the district court. There was an attempt where this matter really started in the Patent and Trademark Office, in which in December 2013, ILIA attempted to apply to register its trade dress, and its applications were uniformly rejected on the grounds that the trade dresses were functional and not distinctive. And that description differed from these two complaints? Yes and no, Your Honor. Interestingly, it differed in words from the first amended complaint, but not in pictures. If Your Honor compares the drawing from the trademark application, which appears at A209, with the drawing that appears in the first amended complaint, which is the subject of this appeal, at A269, Your Honor will find they are the same. So what's happened is that despite the rejection by the Patent and Trademark Office, and the multiple attempts here, we're left with, as Judge Newman points out, a generalized idea, to use the words of older cases, of what the trade dress might be. And this makes this case the perfect example of why this court, for decades, has said that courts must exercise particular caution in extending trade dress protection to product designs. What do you say is the significance, if any, of the lack of registration in deciding this case? I think there are two ways in which it's significant. One, it clearly makes the burden of proof, of proving functionality, on the plaintiff, on Elijah. Of showing non-functionality. Of non-functionality, that's correct, of course, Your Honor. In 1999, Congress amended the statute. There's some case law preceding that, in which the issue of functionality was raised as a defense. Congress changed Section 43A of the Lanham Act, in 1999, to make it clear that the burden of proving non-functionality of non-registered trade dress is on the party asserting it, the plaintiff. Second, I think the fact that the experts in the Patent and Trademark Office, who routinely deal with these issues, who every day must make a decision, who are bound by statute not to allow registration of functional features, the fact that they rejected these applications is further evidence that, in fact, what we're dealing with is functional and, therefore, non-protectable. Was the office's sole ground the functionality issue? No, Your Honor. There were two grounds. One was functionality, and the other was non-distinctiveness. What happened is that, in all cases, there was a rejection. The rejection was never addressed, and, in all cases, there was never an appeal to the Trademark Trial and Appeal Board. Instead, ILIA shifted its attention to the district court and filed the original complaint in this case in March of 2015. As Your Honor pointed out, there were multiple attempts to define the trade dress. We're left with the First Amendment complaint, and what do we have? A Mary Jane strap without a definition of how wide it is. Does it cover the entire instep? Only a portion of it. Is it a closed-toed shoe? Is it a pointed shoe? Is it a square shoe? Is it a rounded shoe? Of notches on the side, are they straight notches or are they wavy notches? I could go on and on. What we have here is exactly what this court in Landscape said, that a plaintiff's inability to explain to the court exactly which aspects of its product design merit protection may indicate that its claim is pitched at an improper level of generality. But if you do look at the photographs, right, the shoes do look remarkably similar in terms of the thickness of the wedge, the thickness of the strap, the multicolored weave that's used, the protrusion at the heel and so on, and the text doesn't do a great job of describing the similarities between the two. But what are we to make of the photographs here? They are entitled to protection for an overall look. I mean, why wouldn't they have another chance to amend and spell it out better? I think there are three questions in your Honor's comments. First is, do the shoes the plaintiff's and the defendant's look similar? Yes, they do. There's no question about it. We're not arguing that they don't. But the reason that that is acceptable and permissible is because the plaintiff does not have any protectable interest. If the plaintiff had sought and obtained a design patent, for example, then the sole issue of whether the shoes look similar would be relevant. But that's not the case here. If shoes were subject to copyright protection, which they're not, then we could see whether they were substantially similar. So that's the first issue. Second, yes, it's certainly true that the words don't do a good job in describing it. In fact, what they do is they produce, as the magistrate judge said, what the words do is they give a general idea of what it is that's protected, generally speaking, a closed-toed shoe, a woven design, and so on. But as Your Honor pointed out in asking the question of Mr. Levine, the reason that you focus not only on the overall look but on an articulation of specific elements is because, as the Court said in landscape, courts are unable to shape the narrowly tailored relief if they do not know what distinctive combination of ingredients deserve protection. So there is simply, as the magistrate judge found and as Judge Hurley found when he affirmed the report and recommendation, there is no properly defined description of the trade dress. And beyond that, what we're dealing with is something that's clearly functional. The law debriefs by the plaintiff are not necessarily clear, but this Court knows well what the tests of functionality are. Under the traditional or utilitarian test, a product design is functional if it's essential to the use or purpose of the product or affects the cost or quality of the product.  If it will put competitors at a significant non-reputation-related disadvantage, i.e., will significantly hinder competition, and that's Christian Louboutin. And that leads us back to Your Honor's question. Yes, the shoes are similar. But in fact, what Madden has is the right to sell shoes that are similar. And if it couldn't sell shoes that it believes have a particular aesthetic appeal or are popular with a subgroup of its market or are trending this year or this season, then it would be at a disadvantage. And a disadvantage would not be caused because it's infringing someone's trade dress, but simply because it's adopting a popular style. And that's the holding of Louboutin. And what answer do we have? How did the plaintiff seek to sustain its statutorily imposed burden? First, it said, well, the products have no utilitarian advantage. The district court didn't think that was sufficient, and it's surely not. But then the principle focus of the briefing in this case is that there are multiple alternatives that could have been used. And the fact that there are multiple alternatives is, of course, meaningless because I, as a lawyer of my generation, am wearing black tassel loafers today. But my shoes could be wingtips. They could have laces. They could have a cap toe. They could have a plain toe. The fact that there are these multiple alternatives doesn't mean that my shoes are nonfunctional. To adopt the appellant's argument, all shoe designs are inherently unfunctional because I could be wearing sneakers to court or I could be wearing wingtips. So that can't be the argument. But you know what the best argument to demonstrate the functionality and the fact that the trade dress is not properly defined? It's that the Lulia and the Comfrey trade dresses both are asserted against the Bern shoe sold by Madden. Yet one is a closed-toe shoe, the plaintiffs, and one is an open-toe shoe. One has horizontal grooves in the sole. One has vertical grooves in the sole. It cannot be that these two trade dresses are both infringed by the same product. As Aristotle would say, it has to be either A or not A in a given time and a given respect. The shoes are not both open and closed-toe at the same time. What does that mean? It only means that there is no proper definition that to grant trade dress protection here would be granting trade dress protection of an idea, an idea no narrower than a swan float or a card design where the pictures are cut out or the design of a cable jewelry or any of the other kinds of cases that have come to this court for 20 years and have been rejected. Could you say a word about the, I don't know what you call it, the part of the heel that looks like a raised tab of some sort? One of the trade dress elements is defined as a raised portion of the heel with a cutout through which the weave can be viewed. Is it cut out totally or does it go through to some fabric? It goes through to some fabric. You don't see through it? That's right. You see through the cutout portion so you can see the weave which otherwise forms part of the design. By the way, was the shoe offered as an exhibit and attached to the complaint? No. It was a drawing that was attached, but I believe pictures of the shoes. There's no shoe in our record. I believe the shoe is in the record, Your Honor, although I can be corrected, but I believe it was attached as an exhibit in some of the motion practice, but I'm not positive. Is it in our record here? I believe. Is it? I think the answer people who know better have told me, no, Your Honor, the actual shoe is not in the record. But it was offered in the trial court. Pictures were offered. Only pictures, not the shoe itself. That's right. This case never got past the Rule 12b6 stage, so there was no opportunity, I guess, for the plaintiff to present the shoe other than the pictures. Is that so? If you can attach a picture, you can't attach an object? I think if I had filed a complaint, I would have found a way to make the shoe available to the court. Yeah, that's what I would have thought. Go ahead. Okay. Thank you. Thank you. Not on ECF, anyway. Not on ECF. Mr. Levine, you have three minutes. Thank you. First of all, I'd like to address Judge Newman's concern about the specifics of the shoe as it's defined. One feature, for example, on this comfy shoe is we define it as approximately a quarter-inch multicolor or multishaded wide straps, which form a woven distinctive alternating pattern on the upper portion of the shoe and then present a picture. The Mary Jane strap, which Your Honor... Is it covering on the front? Yes. Do you describe the colors? We describe it as a multicolor. Multicolor. Right. So does that mean you get to protect any one of the hundreds of combinations of colors? If it's a . . . Do you call it multicolored? Not in and of itself, Your Honor, but when combined with the other features of the shoe, the answer would be yes. I know you say that, but again, if you come to the end of the case and win and you get an injunction that protects a multicolored pattern, then you can have a blue one, a red one, a yellow one, a green and white one. All of those would be enjoined because you got protection for a, quote, multicolored top. Well, again, I think the standard in this court has decided in landscape, I believe, was the overall look of the shoe. So the fact that the multicolor could have been red or green or blue and orange, if it created the same overall look and it was a quarter-inch multicolor weave, I think then my answer would be yes, Your Honor. Why didn't you try to copyright your design? You can't copyright a shoe, Your Honor. A design? We've actually filed a previous case against Kohl's a number of years ago, and the district court was very clear that the trade dress claim could go forward, but that there was no grounds to copyright the design on the shoe. So we did not pursue a copyright. That design couldn't have been, but designers copyright it all the time. A shoe design, Your Honor? A design of a fabric. Of a fabric, I understand, Your Honor. That's what this is. This is a fabric on the top of a shoe. It's a weave, Your Honor. It's not a particular design other than it's a weave, yes. It's not as if there was a drawing on a sweater. I'm not saying you would have won. Maybe your design is not sufficient to get a copyright, but designs are copyrighted. Fabric designs are copyrighted. Well, fabric designs are copyrighted, but not simple weaves, Your Honor. I don't believe that we would have prevailed, and nor did we. . . When you say not simple weaves, that's precisely their point. This is just a simple weave. Well, it's a simple weave combined with five or six other elements, so it's an overall look. It's not just a simple weave. If I had stopped, if the plaintiff had stopped at that one item in its description, I would agree with you. A simple weave would not have sufficed. But when you combine it, for example, with the other elements. . . And to answer your point, Your Honor, about the size of the Mary Jane strap. . . When you look at the picture that it combines with the other description. . . You can't just look at it in isolation, the complaint. We talk about a quarter-inch weave. There are four weaves, four straps, four different weaves here that show that that Mary Jane strap was one inch. It shows it in the picture. Now, we could elaborate further if we had a right to amend, if that was the issue. But at this point, the court said it would be useless for us to try to amend. But we don't believe that. We think that if that's the issue, that we need to expand and say it's a one-inch strap. . . And define the colors that we're looking at. . . We believe we could do that. I didn't believe it was necessary in light of the fact that there were pictures presented and there were other elements. But we certainly believe that if we were given an opportunity, we could expand further, as we did previously. But we could expand. . . Have you ever said that verbal descriptions that are inadequate can be salvaged by a photograph? No, but you've . . . I don't recall any ruling on that. Just verbal descriptions. And I believe every trade dress claim that I've looked at, the complaints, and we did present numerous ones. In fact, Madden itself is involved in three active trade dress claims in the Southern District today. And each of those complaints present . . . And I can give the docket numbers, if you're interested. But each of those complaints present a description of trade dress, which is far less involved than the descriptions that we have. And combine it with . . . Maybe they'll lose, too. Well, maybe they will, Your Honor. But this is the way trade dress complaints are drafted, typically. There's a description, as detailed as one believes can communicate. And then there's pictures. Very good. Thank you. I think we have your arguments. Thank you. It's a reserved decision.